Common Pleas Court of Cuyahoga County.

ANNA S. BERG V. EQUITY SAVINGS & LOAN CO.

Decided August 9, 1932.

*David Copland,* for plaintiff.
*Green, Palmer & Hadden,* for defendants,

SILBERT, J.

In the instant case the facts appear as follows:

The defendant is and was at all times herein mentioned a building and loan association duly organized and existing under and by virtue of the laws of the State of Ohio. In addition to its general powers it was authorized to and did actually, receive monies on deposit by way of savings accounts, agreeing to pay such deposits a certain definite rate of interest.

On December 1, 1925, the plaintiff opened a savings account with the defendant company and continued to make deposits in said account up to and including April 13, 1931, at which time, the balance of her credit on said savings account amounted to $7,368.23. At the time of opening the account, the plaintiff signed a signature card on which was printed the following:

"We hereby agree to the rules and regulations of The Equity Savings & Loan Company of Cleveland, Ohio."

Simultaneously with opening the account in question, the defendant gave the plaintiff a pass-book, in which were printed the rules and regulations then in effect with the defendant company, among which were incorporated the following:

"To withdraw deposits no notice is usually required excepting in the withdrawal of large amounts. All deposits however are subject to such rules as are allowed by statute or embodied in the by-laws of the Company." pany."

"Depositors upon signing the signature card thereby agree and consent to these rules and regulations which may be altered or amended at any time, and all such altered or amended rules shall be obligatory and binding upon depositors after due notice of same."

Section 17 of the by-laws of the defendant company provided as follows:

"Deposits may be received upon such terms as to interest and withdrawal as the Board of Directors may authorize, provided, however, the interest paid shall not exceed the legal rate and further provided that the Company may at any time require not less than thirty

day's notice of a depositor's intention to withdraw. Applications to withdraw shall be filed in the order received, and paid in the order filed as fast as one-half of the receipts of the Company will pay them. The Directors may, however, apply the entire income to the payment of withdrawals. When a withdrawal is paid in currency, or otherwise, except by check, a receipt for the amount withdrawn must be given by the depositor. A non-negotiable order properly endorsed giving the amount withdrawn and the number of the pass-book shall be accepted by the Company as sufficient receipt. The pass-book must always accompany a withdrawal that the amount withdrawn may be charged therein."

It seems that on October 29, 1931, the directors of the defendant company duly met and endeavored to amend Section 17 of the then existing by-laws so as to provide for a limitation and restriction on the amount of withdrawals permissible by depositors. They endeavored to obtain the approval of this amendment from the Superintendent of Building & Loan Associations at Columbus, Ohio, in accordance with Section 9645 of the General Code of Ohio. So confident were they that this amendment would be approved as adopted, that without delay, they immediately had printed in booklet form, all of the by-laws of the Association including the attempted amendment to Section 17 and this booklet was mailed to all depositors on the same day as passed, viz, October 29, 1931. As a matter of fact this amendment was not approved by the Superintendent of Building & Loan Associations until March 31, 1932.

It seems further that on October 29, 1931, at the same meeting wherein the directors took action to amend the by-laws and apparently acting under such amendment, they passed a resolution as follows:

"Resolved that beginning on October 29, 1931, withdrawals on any savings account or certificate of deposit shall not exceed $1,000.00 in any period of thirty days."

It seems further that on the 18th day of January, 1932, the directors passed the following resolution:

"Resolved that beginning January 19, 1932, withdrawals on any savings account or certificate of deposit shall not exceed $300.00 in any period of sixty days."

No notice of either of the foregoing resolutions was given by the defendant company to any of its depositors except when any depositor called to withdraw a sum in excess of that provided for in the foregoing resolutions, such depositor was then informed that he could not withdraw more than the amount called for in the respective resolutions at and after the respective dates.

The amendment to Section 17 was as heretofore stated finally approved by the Superintendent of Building & Loan Associations, and part of such amendment provided as follows:

"* * * The Board of Directors, regardless of the requirement that the depositors give written notice of their desire to make withdrawals and regardless of the order of application for withdrawals, may authorize the payment of withdrawals to any one depositor on demand, in a sum not exceeding $25.00 at any one time, nor exceeding $100.00 in any one calendar month, and any such sums so paid shall not be in addition to the amounts paid on any notice of withdrawal."

It is further admitted that prior to the amendment of Section 17 of the by-laws effective March 31, 1932, the defendant company did not at any time require written notice on the part of a depositor of such depositor's intention to withdraw any moneys from his or her account.

On December 24, 1931, there being a balance due the plaintiff on her savings account as hereinbefore stated of $7,368.23, she presented herself at defendant's place of business with the intention of withdrawing the entire amount due her, filled out a withdrawal slip for same and presented same with her pass-book to the defendant company.

She was then informed for the first time that she could not withdraw more than $1,000.00 a month, whereupon she stated that if she could withdraw such an amount monthly she would be satisfied and thereupon accepted the $1,000.00.

The following month she again called at the defendant company and demanded $1,000.00 whereupon she was informed that a new rule had been put into effect limiting withdrawals to $300.00 every sixty days. She objected to

this and had some discussion with some official of the bank who it seems stated to her that he would take the matter up with the executive committee of the defendant company and see what could be done. She called some little time later, namely on February 11, 1932, whereupon she was again informed that all she could receive was $300.00 which amount she accepted under protest informing them at that time that she desired the entire amount due her.

Under the impression that the defendant company required written notice of her intention to withdraw, the plaintiff did immediately thereafter through her attorney, notify the defendant in writing of her intention to withdraw the entire balance due her which at that time amounted to $6,068.23. In answer to said letter, the defendant company wrote under date of February 15, 1932, that they required no written notice of her intention to withdraw, but cited in that letter the resolution passed by the Board of Directors on January 19, 1932, limiting the amount of withdrawals to $300.00 in any period of sixty days.

Shortly thereafter, namely on February 18th or 19th, the plaintiff accompanied by her attorney presented her pass-book and a withdrawal slip for the full amount of her deposit and demanded payment thereof. The defendant company refused to honor such withdrawal slip.

Judgment has heretofore been rendered in favor of the plaintiff for the full amount due her. A motion for a new trial was duly filed by the defendant company and the matter now comes before this court on same.

This case has been well argued by both parties and counsel for defendant is to be commended for the very able and illuminating briefs filed by it; if, however, the court cannot agree with many of the contentions of the defendant, this is no reflection upon the ability and masterful way in which counsel for the defendant presented this case.

The General Code provides that a corporation for the purpose of raising money to be loaned to its members and others shall be known as a "Building & Loan Association," and it may adopt the name of "Savings and

Loan Association" if it so desires. Such a corporation is peculiarly a creature of our statute. They have peculiar rights and powers as defined by our statutes.

The term "Building Association" was first applied to an organization of individuals associating themselves together by paying in small definite amounts of money periodically and from the pool thus formed enabling the members to build homes.

Essentially they were mutual organizations, organized for the purpose of carrying on business for the mutual benefit of its members, the theory being that all members will mutually aid each other at some time during their membership. At first the business of a building and loan association was confined solely to its own members. However, with the passage of time it was sought to enlarge the scope of activities of such associations and without going too deeply into the history of such associations, as they are now considered in Ohio, they are stock companies organized for profit with certain banking powers, namely, the right to receive deposits by way of savings accounts and pay interest on same provided such interest does not exceed the legal rate of interest; so that to all intents and purposes insofar as the relationship of such association is concerned with their depositors, they are in a limited way banking institutions and it is not improper to refer to them as banks and the status between a depositor and such association is the same as that of a depositor and a savings bank.

So with this thought in mind, in the case at hand, plaintiff was not a member of the defendant association. She was a general depositor. She had no direct financial interest in its business nor right to participate in the management of its affairs. She was not entitled to share in the profits nor did she assume any liability for any resultant losses. Nor as a stockholder did she have any right to participate in any part of its ultimate net assets. The money she deposited was entitled to be co-mingled with other funds paid into the defendant company. It was not intended by her or any other depositor that the identical money deposited should be repaid on demand. As soon as money was deposited by the plaintiff or any

other depositor with the defendant company, it at once became the property of the defendant. The identical money deposited by the plaintiff or other depositors might have been stolen or embezzled from the defendant company, yet the indebtedness of the defendant company would remain entirely unaltered by these circumstances toward the plaintiff or other depositors.

As between the plaintiff and the defendant, there was at all times and still is a relationship of debtor and creditor. The association never was nor is in any sense of the word a trustee, as claimed by the defendant.

And so on each occasion when the plaintiff deposited money with the defendant on her savings account there was a continuing contract between them. It is true that the statutes in force at the time of her deposits constituted part of this contract. Similarly the by-laws and the rules and regulations not in contravention of any statutory provision, became binding upon the plaintiff. But if these were binding upon the plaintiff, they were equally binding upon the defendant. Thus, when the plaintiff signed her card agreeing to be bound by the rules and regulations of the defendant company it meant that she would be bound by the rules and regulations then existing, not necessarily all further rules and regulations thereafter adopted by the defendant company, without notice to her.

And even though the by-laws provided at the time the account in question was opened that same could be altered or amended by the directors, that did not mean that after she made her deposits the defendant company could arbitrarily amend the by-laws without notice to her, if the effect of such amendment was to deprive her of any vested rights.

"The courts in the United States generally hold that the right to withdraw, after full compliance with the conditions of the statute or by-laws, is a vested contractual right and any change which impairs the substance of the right, after it has become vested by membership, is invalid as to the existing members, but slight changes affecting the remedy only may be made." See Sundheim on Building & Loan Associations, second edition, page 151.

At all times when she made her respective deposits, there were no rules, regulations or by-laws restricting the amount of withdrawals. On the contrary, depositors without any restrictions whatsoever could, at their pleasure, withdraw any amount they desired from their savings accounts. And plaintiff had a right to demand and receive all of her money on December 24, 1931.

It is true if, after notice of the resolution of October 29, 1931, and January 19, 1932, she consented thereto, then she would be bound by them. But at no time did she receive notice of same, nor did she consent to them.

Furthermore when plaintiff signed the card agreeing to be bound by the rules and regulations of the defendant company, the phraseology on such card denotes something *in praesenti*, and certainly not to be construed as a waiver of any rights or a consent to the adoption of new rules or regulations affecting her substantial rights, thereafter passed.

It is contended by the defendant that the resolution of October 29, limiting the withdrawals of members to $1,-000.00 per month was applicable to the plaintiff in that it was passed pursuant to the then existing by-laws of the defendant company. Certainly if the defendant could not amend its by-laws to defeat the vested rights of the plaintiff, then it goes without saying that they could not by resolution accomplish that which they could not effectively do by a by-law.

It is intended that depositors should have some measure of protection against any unreasonable or arbitrary rules, regulations or by-laws adopted by an association such as the defendant company's, since under Section 9645 of the General Code of Ohio, it specifically provides that no by-laws or amendment thereto could be effective unless· and until it was approved by the Superintendent of Building & Loan Associations.

It is true, Section 9652 of the General Code of Ohio provides as follows:

"To permit withdrawal of deposits upon such terms and conditions as the association provides except by check or draft, but no such association shall be permitted to carry for any member or depositor any demand, com-

mercial or checking account. Nothing in this chapter shall prevent members or depositors from with-drawing funds by non-negotiable orders."

And, the original Section 17 of the defendant company's by-laws also provided that,

"Depositors may be received upon such terms as to interest and withdrawals as the Board of Directors may authorize   *   *   *."

As this court views it, neither the terms of the statute nor the by-laws referred to, give the defendant company the arbitrary right to adopt, repeal or amend rules, regulations or by-laws so as to defeat the contractual rights of the plaintiff.

A rule, regulation or by-law must at all times be reasonable. They must not destroy or tend to destroy the vested rights or contractual relations of the parties. As stated by Judge Richmond in the case of *Holyoke Building and Loan Association* v. *Lewis*, 27 Pac. 872,

"It is insisted that the corporation could alter, amend, add to or repeal any by-laws and that by virtue of this authority, Lewis is precluded from asserting any right under the pre-existing by-law. No private corporation can repeal a by-law so as to impair rights which have been given and become vested."

And,

"*   *   * where the right to withdraw under the original by-laws was unconstitutional, an amendment providing that only one-half of the receipts should be applicable to withdrawals, is not binding on existing members." *Sintieff* v. *People B. L. & S. Assn.*, 57 N. Y. S. 611 (affirmed 166 N. Y. 630).

"Nor can amendments to by-laws, nor rules and regulations adopted be made retroactive."   See 9 Corpus Juris page 926.

Perhaps the strongest case in connection with this matter is that of *Kimmins* v. *Boston 5c Savings Bank*, 141 Mass. 33. The facts in that case are analogous to the instant one. The board of directors of the defendant company was authorized by the by-laws to make new by-laws or amended same. It was held there that the directors

could not authorize any material change as it existed at the time the deposit was made. As stated by the court:

"The right of the depositors to recover money was to be determined by the by-laws in force when the original contract was made and. not by the by-laws subsequently passed."

And so on this theory, the by-laws together with the rules and regulations in effect with the defendant company on the day of the last deposit of the plaintiff, namely April 13, 1931, which provided for no restrictions whatsoever on the amount of withdrawals or for any notice of intention to withdraw are those which are binding upon the parties and would control. It is true that the by-laws provided that they may require notice of any contemplated withdrawal or large amounts and that only one half of the receipts of the defendant company may be applied to withdrawal, but it is quite apparent that these rights were merely permissive and could be waived, as actually was done by the company, for many years prior to the adoption of their so-called "withdrawal rule."

"The provisions of a by-law of a building and loan association requiring a member to give one months notice of his intention to withdraw may be waived by the association." *McKenney* v. *Diamond State Loan Association*, 18 Atl. Rep. 905.

So that on April 13, 1931 the plaintiff had a vested right to demand and receive from the defendant company all of the monies due her at that time, namely $7,368.23 without any restrictions or limitations other than the presentation of the pass-book, the presentation of a non-negotiable order presented to the defendant company during banking hours.

And on December 24, 1931, when the plaintiff demanded the entire amount due her the defendant company had no legal authority to withhold the same.

And as further evidence that the defendant could not legally place any restriction upon the plaintiff in her withdrawals by rule or regulation, their own contract which is binding upon them as well as the plaintiff specifically

provided under their rules and regulations at all times extant, that the,

"Rules and regulations may be altered or amended at any time and all such altered and amended rules shall be obligatory and binding upon depositors *after due notice of same*."

Certainly, without any notice to the plaintiff, the defendant could not arbitrarily amend the rules and regulations to impair plaintiff's vested rights.

And it is not disputed that no notice of the adoption of the rules or regulations of October 29, 1931 and January 19, 1932 was given to the plaintiff.

In conclusion, if the law were otherwise as herein stated, the defendant company would have rights not dreamed of by our Legislature. They could have the right to pass retroactive laws and laws tending to deprive one of his property, without due process of law, all in contravention of our constitutional provisions. An illustration is forcefully presented in the instant case. The plaintiff was and is a creditor of the defendant company as of December 24, 1931 to the extent of $7,368.23. This represented money, the highest form of property, since all other property is measured in terms of dollars.

According to the amended by-laws adopted by the defendant company on March 31, 1932, providing for withdrawals of $100.00 a month, she would have to wait nearly 6 years for her debt to be repaid. Yet if any other person became a creditor by virtue of goods sold or services rendered, to the defendant company, such creditor could demand, and receive his money immediately. This is eminently unreasonable, and in effect penalizes a person depositing funds with the defendant company.

The court is not attempting at this time to pass on the validity of the amendment adopted and approved by the Superintendent of Building and Loan Associations on March 31, 1932, nor as to the rights of depositors subsequent to the adoption of the rules and regulations of October 29, 1931 and January 19, 1932.

The facts in this case are peculiar unto themselves and the court cannot quite agree with defendant that the

outcome of this case may materially affect thousands upon thousands of depositors in other similar associations.

For the reasons hereinbefore set forth, the court feels that the judgment heretofore rendered is proper, and that the motion heretofore filed by the defendant for a new trial is properly overruled.

Common Pleas Court of Montgomery County.

STATE EX REL FULTON, SUPT. OF BANKS, V. ACHEY ET AL.

Decided October 18, 1932.

*Estabrook, Finn & McKee, Kusworm & Shaman,* and *Iddings & Iddings,* for plaintiff.

*R. W. Baggott* and *Theodore C. Lindsey,* for defendants.

SNEDIKER, J.

This case is before the court on demurrers filed to the petition on the grounds, first that there is a misjoinder of parties defendant; second, that the petition does not state facts sufficient to constitute a cause of action.

The allegations of the pleading are: that Ira J. Fulton is the appointed and acting superintendent of banks of the State of Ohio; that on the 31st day of October, 1931, he took over for liquidation, pursuant to Section 710-89 of the General Code of Ohio, the Union Trust Company, of this city, and by such act became vested with the title to and the possession of the property and assets of the Union Trust Company; that the Union Trust Company is a corporation organized and existing under Ohio laws prior to